# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BRYAN SWINFORD,<br>    Petitioner, | Civil Action No. 1:11-cv-32 |
| vs. | Barrett, J.<br>Bowman, M.J. |
| WARDEN, DAYTON<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Dayton Correctional Institution in Dayton, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition; respondent's return of writ with exhibits; petitioner's response to the return of writ; and the trial transcript, which was filed by respondent at the request of the Court on March 8, 2012. (Docs. 1, 6, 8, 9).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On August 14, 2008, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1); one count of kidnapping in violation of Ohio Rev. Code § 2905.01(B)(2); one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1); and one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(3). (Doc. 6, Ex. 1). The charges arose from an incident occurring on June 9, 2008, in the home of the victim, petitioner's former girlfriend. (*See* Doc. 6, Ex. 1 & Ex. 9, p. 1). During that incident, the victim "suffered extensive injuries to her face and skull" when, according to the victim's trial testimony, petitioner "hit[] her over the head with what [she] thought may have been a large, heavy

flashlight" during an argument. (*See* Doc. 6, Ex. 9, p. 1).[1]

The aggravated robbery charge was dismissed on the State's motion. (Doc. 6, Ex. 2). Following a jury trial on the remaining counts, petitioner was acquitted of kidapping and aggravated burglary, but was found guilty on the felonious assault charge. (*See* Doc. 6, Exs.3, 5).

Thereafter, petitioner's counsel filed a motion for judgment of acquittal notwithstanding the jury's verdict, which apparently was denied. (*See* Doc. 6, Ex. 4). After a sentencing hearing held on September 2, 2009, the trial court sentenced petitioner to a four-year prison term for the felonious assault offense. (Doc. 6, Ex. 5).

## State Appeal Proceedings

Petitioner's trial attorney filed a timely appeal on petitioner's behalf to the Ohio Court of Appeals, First Appellate District. (Doc. 6, Ex. 6). In the appellate brief, counsel presented three assignments of error, including the claim that the "trial court erred in denying Swinford's motion for mistrial based upon prosecutorial misconduct during argument." (Doc. 6, Ex. 7). On July 21, 2010, the Ohio Court of Appeals issued a Judgment Entry overruling the assignments of error and affirming the trial court's judgment. (Doc. 6, Ex. 9).

Petitioner's counsel next filed a timely appeal to the Ohio Supreme Court on petitioner's behalf, raising the following propositions of law:

> 1. Where a prosecutor has engaged in misconduct during closing argument and the defense timely objects, the prosecution has the burden of proving beyond a

---

[1] The summary of facts set forth herein is derived from factual findings made by the Ohio Court of Appeals, First Appellate District, in its direct appeal decision. 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings, those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

reasonable doubt the jury would have convicted without the improper comment.

2. Where there is a finding of prosecutorial misconduct in closing argument a curative instruction does not create a rebuttable presumption the harm caused has been remedied.

(Doc. 6, Exs. 10-11). On December 15, 2010, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (Doc. 6, Ex. 13).

### Federal Habeas Corpus

The same attorney who represented petitioner in the state trial and appellate proceedings filed the instant habeas corpus action on petitioner's behalf on January 14, 2011. (*See* Doc. 1). In the petition, he asserts the following claim as the sole ground for relief:

> **Ground One:** Bryan Swinford's right to a Fair Trial as guaranteed by the 6th and 14th Amendments to the US Constitution were violated when the Prosecutor engaged in misconduct by shifting the burden of proof to Swinford in closing arguments.
>
> **Supporting Facts:** During the initial closing argument the prosecutor stated: "If they were so convinced that Bryan was going to be excluded on DNA, they could have had it tested as well. We know that didn't happen either, so none of those witnesses come into court."

(Doc. 1, p. 4).

In the return of writ filed in response to the petition, respondent does not raise a procedural defense, but contends that petitioner has not demonstrated that he is entitled to habeas relief based on the merits of his claim. (*See* Doc. 6). Petitioner's counsel has filed a "traverse" in reply to the return of writ to counter respondent's contention that petitioner's claim for habeas relief is meritless. (Doc. 8).

## II. OPINION

**Petitioner Has Not Demonstrated That He Is Entitled To Habeas Relief Based On The Merits Of His Prosecutorial Misconduct Claim**

Petitioner contends that he is entitled to habeas corpus relief under the applicable standard of review enunciated in 28 U.S.C. § 2254(d) because the prosecutor made an improper comment during closing arguments, which shifted the burden of proof to petitioner to prove his innocence in violation of a specific right guaranteed by the Constitution. (Doc. 1, p. 4; *see also* Doc. 8, p. 5).

At trial, defense counsel sought to undermine the prosecution's case during cross-examination of Silverton police officers Cheryl Cravens, Bruce Plummer and Michael Dye, who participated in the police investigation leading to petitioner's arrest and indictment, in an attempt to establish that their investigation was inadequate. Officer Plummer testified on direct examination that two items of evidence were collected for testing: (1) a swab taken from the victim's fingernails, which may have been used defensively against her assailant, was submitted for DNA testing; and (2) a flashlight that may have been used in the assault was dusted for fingerprints. (Doc. 9, Trial Tr. 438-39, 452). The results from those tests did not prove useful in identifying the victim's assailant. (*See id.*).

On cross-examination of the three State witnesses, defense counsel sought to elicit damaging testimony showing that the investigating officers failed to collect or preserve crucial evidence at the crime scene which could have been submitted for DNA testing, as well as failed to conduct more extensive DNA testing of the sample taken from the victim's fingernails, that may have resulted in the identification of another person as the victim's assailant or otherwise exonerated petitioner. (*See* Doc. 9, Trial Tr. 388-21, 466-83, 532-36). The prosecutor's challenged remark occurred during initial closing argument in an effort to respond to the defense

position in advance of defense counsel's closing argument:

> A few of the topics that you're going to hear [defense counsel] talk about is the lab report.
>
> What Mr. Dye said though, according to him, only one of the profiles was enough to get proper DNA, and profile testing.
>
> We saw from that DNA profile – and it was both hands that were tested that matched predominantly a female.
>
> And in this case it's not unexpected for Ms. Miller to have put her hands on her head when she had a wound to her head. We know that's probably how the blood got on there. And that's why it belonged to a woman.
>
> Lieutenant Dye said he couldn't submit for DNA because he didn't have a large enough profile to check against anybody else.
>
> This sample was not kept secret by the prosecution from the defense. They knew the sample existed.
>
> If they were so convinced that Bryan would be excluded on DNA, they could have had it tested as well. We know that didn't happen either, so none of those witnesses come into court –

(Doc. 6, Ex. 14, Tr. 24-25). Defense counsel immediately lodged an objection to the prosecutor's last remark, stating: "Shifting the burden, and that's unfair, violates his right to a fair trial." (Doc. 6, Ex. 14, Tr. 25).

In the sidebar conference that ensued, the court found that the prosecutor had "shifted the burden" by commenting on the failure of the defense to conduct DNA tests, which required a "limiting instruction" to the jury. (Doc. 6, Ex. 14, Tr. 25-26). Defense counsel then moved for a mistrial, but the court responded by stating: "I think it can be cured by an instruction. It will be struck." (Doc. 6, Ex. 14, Tr. 26). At that point, the sidebar conference ended, and the court instructed the jury as follows:

> Ladies and gentlemen, I'm going to ask you to disregard the last statement made by [the prosecutor] regarding whether or not the defense should have tested any samples here.

> In the heat of argument, people say things. First of all, let me point out, this is simply argument.
>
> Second of all, let me point out and reiterate, that the burden of proof is on the State.
>
> The defense need not put on any evidence, nor prove anything in this respect. The burden's solely on the State to prove the allegations.

(Doc. 6, Ex. 14, Tr. 26-27).

In its final instructions to the jury before it retired to deliberate, the court reiterated that under the "burden of proof" to be applied, the "[t]he defendant is presumed innocent until his guilt is established beyond a reasonable doubt," and "[t]he defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offenses charged in the indictment." (Doc. 6, Ex. 14, Tr. 69). In addition, the court instructed the jury that "evidence" does not include "closing arguments of counsel," and that "[s]tatements or answers that were stricken by the Court, or which you were instructed to disregard are not evidence, and must be treated as though you never heard them." (Doc. 6, Ex. 14, Tr. 71-72).

On direct appeal, petitioner contended that the trial court committed reversible error when it refused to grant a mistrial and instead gave a limiting instruction after the prosecutor made the improper burden-shifting remark during closing argument. The Ohio Court of Appeals, which was the only state appellate court to address the merits of this claim, overruled the assignment of error, reasoning as follows:

> We agree with Swinford that [the prosecutor's remark] was improper since it suggested to the jury that Swinford needed to prove that he was innocent. But our analysis does not stop here. We must determine if this improper statement was so egregious that it deprived Swinford of a fair trial.
>
> Viewing the closing argument and the trial in their entirety, as we are required to do, we hold that this single statement did not violate Swinford's right to a fair trial. Following defense counsel's objection, the court instructed the jury to

6

> ignore the improper statement, and it also issued a lengthy and proper curative instruction. Later, the jury was again properly instructed that the state had the burden to prove Swinford guilty beyond a reasonable doubt. Jurors are presumed to follow the trial court's instructions. And we find nothing to demonstrate the contrary in this case.

(Doc. 6, Ex. 9, pp. 2-3) (footnote citations omitted).

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional issue that was addressed on the merits by the Ohio Court of Appeals is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *petition for cert. filed* (U.S. Dec. 19, 2011) (No. 11-7970). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

7

As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44,

the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals cited *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), as well as Ohio case-law, in addressing petitioner's claim under the standard of review typically used to determine whether a prosecutor's misconduct during trial has deprived the defendant of his due process right to a fundamentally fair trial. (*See* Doc. 6, Ex. 9, p. 2 & n.2). As the state appellate court recognized, the "fundamental fairness" analysis involves a two-part inquiry as to (1) whether the prosecutor's challenged conduct was improper; and (2) if so, whether the impropriety "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Donnelly,* 416 U.S. at 643; *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("it is not enough that the prosecutors' remarks were undesirable or even

9

universally condemned;" rather, the "relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process") (internal citation and quotation omitted).

Under the due process standard of review, "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, . . . the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. *United States v. Young,* 470 U.S. 1, 11-12 (1985). Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.[2]

As an initial matter, petitioner contends that the state appellate court applied the wrong standard of review in this case. (Doc. 8, p. 4). He argues that the Supreme Court carved out an exception in *Donnelly* and *Darden* for cases implicating a specific right expressly guaranteed by

---

[2]*See also Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003)); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997) (citing *Serra v. Michigan Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir. 1993)); *Akins v. Warren*, 362 F. App'x 508, 513-14 (6th Cir. 2010), *petition for cert. filed* (U.S. Aug. 26, 2010) (No. 10-6077); *Graham v. Warden, Chillicothe Corr. Inst.*, No. 1:10cv616, 2011 WL 3941615, at *22 (S.D. Ohio July 22, 2011) (Litkovitz, M.J.) (Report & Recommendation), *adopted*, 2011 WL 3941512, at *10 (S.D. Ohio Sept. 7, 2011) (Barrett, J.).

the Constitution. (Doc. 8, pp. 4-5). Petitioner cites a Tenth Circuit decision–*Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990)–as support for the application of a heightened standard of review in a case such as this, where the state courts found that the prosecutor's remarks infringed on petitioner's "specific constitutional right" to the presumption of innocence. (Doc. 8, p. 5).

As petitioner has pointed out, the Supreme Court emphasized in *Donnelly* that "[t]his is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, . . . or in which the prosecutor's remarks so prejudiced a specific right." *Donnelly*, 416 U.S. at 463. The Court cautioned: "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Id.* In addition, in *Darden*, 477 U.S. at 182, the Court noted that the prosecutor's remarks had not "implicate[d] . . . specific rights of the accused" when it ruled that the petitioner was not deprived of a fair trial.

In *Mahorney*, the Tenth Circuit relied on those statements in *Donnelly* and *Darden* in holding that "[w]hile, ordinarily, claims of prosecutorial misconduct and other trial errors are reviewed on habeas [under the fundamental fairness standard of review], when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Mahorney*, 917 F.2d at 472. In concluding that "fundamental fairness analysis did not govern" the prosecutor's remarks pertaining to the presumption of innocence, the court emphasized: "[T]he issue is not the undeniably fundamental nature of the presumption of innocence, but rather whether, under the circumstances of petitioner's trial, the presumption was so undermined that the constitutional protection ordinarily afforded thereunder was effectively denied." *Id.* at 473. The court went on to evaluate "the prejudicial effect that the

11

objectionable comments had on the presumption of innocence by considering the pertinent surrounding circumstances at trial." *Id.* Because the trial court had overruled defense counsel's objections to the prosecutor's misstatements of the law, thereby placing its "official imprimatur" on the misstatements, and also failed to cure the problem or otherwise preserve the presumption of innocence by way of "admonishment or special instruction of the jury," the Tenth Circuit concluded that the prosecutor's comments amounted to a prejudicial violation of the petitioner's constitutional rights, which warranted habeas relief. *See id.* at 473-74.

Petitioner has not cited, nor could the undersigned find, any Supreme Court or Sixth Circuit precedent expressly adopting the *Mahorney* court's interpretation of *Donnelly* or *Darden* or the heightened standard of review employed by the *Mahorney* court for cases where the prosecutor's challenged conduct is found to implicate a specific constitutional right. Indeed, to the contrary, in *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002), the Sixth Circuit rejected an analogous prosecutorial misconduct claim, holding in accordance with the fundamental fairness standard of review that the alleged burden-shifting error in the prosecutor's statement "was not so severe as to deprive [the petitioner] of a fair trial."[3] Moreover, more recently, in *Hawkins v. Coyle*, 547 F.3d 540, 552-53 (6th Cir. 2008), the Sixth Circuit evaluated a prosecutorial misconduct claim involving an alleged violation of the petitioner's specific Sixth Amendment right to confront the witnesses against him under the two-part fundamental fairness test that was utilized by the state appellate court in this case.

In any event, *Mahorney* is distinguishable from the case-at-hand. While acknowledging that the Supreme Court has emphasized that courts must take "special care" to assure that a

---

[3]District courts within the Sixth Circuit have also addressed analogous prosecutorial misconduct claims under the fundamental fairness standard of review. *See, e.g., Carson v. Hudson,* No. 2:07cv375, 2009 WL 33367, at *12-16 (S.D. Ohio Jan. 5, 2009) (Abel, M.J.), *adopted*, 2009 WL 1010639 (S.D. Ohio Apr. 14, 2009) (Sargus, J.); *Stewart v. Booker*, No. 07-14081, 2009 WL 973343, at *4-5 (E.D. Mich. Apr. 9, 2009).

prosecutor's challenged remarks do not infringe on a specific constitutional right, it appears clear from the record that, unlike the trial court in *Mahorney*, the trial court followed the Supreme Court's instructions in this case. Specifically, the trial court not only sustained defense counsel's objection to the prosecutor's statements and immediately thereafter instructed the jury to disregard the challenged remarks, it took "special care" at that juncture in the proceeding to ensure that the prosecutor's stricken remarks would have no effect on the jury by emphasizing that the burden was "solely" on the State to prove the criminal charges and that petitioner "need not put on any evidence, nor prove anything" to establish his innocence. (*See* Doc. 6, Ex. 14, Tr. 25-27). Furthermore, in its final instructions to the jury, the trial court reiterated that petitioner was to be "presumed innocent" and thus "must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offenses charged in the indictment." (Doc. 6, Ex. 14, Tr. 69).

On direct appeal, the Ohio Court of Appeals determined that petitioner was not denied a fair trial in light of the trial court's handling of the matter, which corrected any juror misconception that may have arisen from the prosecutor's stricken remark. (*See* Doc. 6, Ex. 9, pp. 2-3). In other words, in contrast to *Mahorney*, the state court concluded that the improper comment did not actually result in a shifting of the burden of proof or otherwise deprive petitioner of his constitutional right to the presumption of innocence in this case. *Cf. Yarrington v. Davies,* 992 F.2d 1077, 1079-80 (10th Cir. 1993) (holding that although misstatements regarding the burden of proof were made at trial, no constitutional violation occurred because, in contrast to *Mahorney*, the proper burden of proof was conveyed at other points in the trial, including in the trial court's final instructions to the jury); *see also Stewart v. Booker*, No. 07-14081, 2009 WL 973343, at *4-5 (E.D. Mich. Apr. 9, 2009) (finding that "the prosecutor did not

13

commit misconduct" because "to the extent [his] comments may have been construed as shifting the burden of proof, . . . any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof").

After "considering the pertinent surrounding circumstances" presented in this case, the undersigned concludes that the state appellate court's adjudication of petitioner's prosecutorial misconduct claim is neither contrary to nor involves an unreasonable application of clearly-established standards of review or precautions enunciated by the Supreme Court in *Donnelly* and *Darden* and their progeny. The alleged misconduct in this case was an isolated event. Moreover it appears clear from the record that the remark was not a deliberate attempt by the prosecutor to shift the burden of proof to petitioner. Indeed, when the trial court told the prosecutor at sidebar that he had "just shifted the burden," the prosecutor responded by stating: "I did not shift the burden." (Doc. 6, Ex. 14, Tr. 25). Instead, it appears that the prosecutor was attempting to respond, albeit in advance of defense counsel's closing argument, to the defense position that the police acted improperly by failing to collect evidence and conduct DNA testing that might have exonerated petitioner.

To the extent that the prosecutor's remark about petitioner's failure to conduct DNA testing possibly could have been construed by jurors as shifting the burden of proof to petitioner at least with respect to that particular issue, defense counsel lodged an immediate objection, and the trial court promptly responded to any resulting confusion by sustaining the objection and giving adequate and thorough curative instructions. *Cf. Lang v. Gundy,* 399 F. App'x 969, 974-75 (6th Cir. 2010) (in holding that the prosecutor's misstatements regarding the law of aiding and abetting did not tend to mislead the jury or prejudice the petitioner's due process right to a fair trial because of the trial judge's prompt response with curative instructions that "sufficiently

counteracted any confusion the jury may have had on the law of aiding and abetting," the Sixth Circuit emphasized that it recognizes 'the effectiveness of curative instructions in mitigating prejudice,'" and that "[t]here exists an 'almost invariable assumption of the law that jurors follow their instructions'") (quoting *Serra v. Michigan Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir. 1993), and *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)), *cert denied*, 132 S.Ct. 124 (2011). It was therefore reasonable for the Ohio Court of Appeals to similarly conclude that the trial court's handling of the matter in this case, through curative instructions as opposed to a mistrial, was sufficient to ensure that petitioner's constitutional rights to the presumption of innocence and a fair trial were protected. *Cf. Hawkins,* 547 F.3d at 553 (holding that the Ohio court's refusal to grant a mistrial was not contrary to or an unreasonable application of clearly-established federal law because "[a]ny impact from [the prosecutor's unconstitutional] cross-examination was blunted immediately by the trial judge's instructing the jury to disregard the questions"); *see also Scott*, 302 F.3d at 603-04 (finding no merit to an analogous prosecutorial misconduct claim because "[t]he trial judge issued proper instructions on the burden of proof and instructed that anything the attorneys said to the contrary was to be disregarded"); *United States v. Simon,* 964 F.2d 1082, 1086-87 (11th Cir. 1992) (and numerous cases cited therein) (in holding that the prosecutor's "probably improper" comment on the failure of the defendant and his family members to produce certain evidence was "rendered harmless by [the court's] curative instructions" on the proper burden of proof, the court pointed out that jurors are presumed to follow the court's instructions, and "nothing indicate[d] that the jurors did not abide by the court's instructions" in that case).

In any event, federal habeas relief may not be granted unless the prosecutor's alleged misconduct "had a substantial and injurious effect or influence in determining the jury's verdict."

*See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)); *see also Rosencrantz v. Lafler*, 568 F.3d 577, 588-92 (6th Cir. 2009) (involving claim that the prosecutor knowingly "countenanced" false testimony), *cert. denied,* 130 S.Ct. 2401 (2010); *see also Robertson v. Warden, Southern Ohio Corr. Facility,* No. 1:10cv46, 2011 WL 5999032, at *11 n.7 (S.D. Ohio Aug. 30, 2011) (Wehrman, M.J.) (Report & Recommendation) (and cases cited therein) (noting that the petitioner "must meet the *Brecht* standard before he can obtain relief for any constitutional error committed by the prosecutor" at trial), *adopted*, 2011 WL 5999604 (S.D. Ohio Nov. 30, 2011) (Dlott, J.).  Petitioner has suggested that the prosecutor's error was not harmless given that the only direct evidence of guilt was presented by the victim, whose testimony regarding the assault was unreliable because, as the state appellate court recognized (*see* Doc. 6, Ex. 9, pp. 1-2), she had only a "spotty memory" of the incident and other credibility issues.  (*See* Doc. 8, p. 3).  However, as the Ohio Court of Appeals also recognized, it is highly unlikely that the prosecutor's isolated remark, which was stricken from the record and the jury was specifically instructed to disregard, had any effect or influence in determining the jury's verdict, particularly given the trial court's additional instructions at the close of the case making it crystal clear that the defendant was to be presumed innocent and that the State had the burden to prove each element of the charged offenses beyond a reasonable doubt.

Accordingly, in sum, the undersigned concludes that the Ohio Court of Appeals' adjudication of petitioner's prosecutorial misconduct claim withstands scrutiny under the deferential standard of review set forth in 28 U.S.C. § 2254(d) to be applied in this federal habeas case.  It is clear from the record that, at the very least, "fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *See Harrington,* 131

S.Ct. at 786. Because the state courts' adjudication of petitioner's sole ground for relief thus is neither contrary to nor an unreasonable application of clearly-established federal law as determined by the Supreme Court, petitioner is not entitled to a writ of habeas corpus.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's sole ground for relief, which has been addressed on the merits herein, because petitioner has not made a substantial showing that he has stated a "viable claim of the denial of a constitutional right" or that the issues presented in the remaining grounds are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

/*s/ Stephanie K. Bowman*
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRYAN SWINFORD,                         Case No. 1:11-cv-32
    Petitioner

    vs                                              Barrett, J.
                                                 Bowman, M.J.

WARDEN, DAYTON
CORRECTIONAL INSTITUTION,
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc