# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BRYAN SWINFORD,

    Petitioner,

v.

WARDEN, DAYTON CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO.: 11-cv-32

Barrett, J.
Bowman, M.J.

## **OPINION AND ORDER**

This matter is before the Court on Magistrate Judge Stephanie K. Bowman's March 13, 2012 Report and Recommendation ("Report") (Doc. 10).[1] The Report recommends that Petitioner Bryan Swinford's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be denied with prejudice, that Petitioner be denied a certificate of appealability, and that Petitioner be denied leave to appeal *in forma pauperis*. (Doc. 10, p. 17).

The parties were given proper notice pursuant to Federal Rule of Civil Procedure 72(b), including notice that the parties may waive further appeal if they fail to file objections in a timely manner. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).[2] After being granted several extensions of time, Petitioner timely filed his Objections to the Report. (*See* Doc. 16).

---

[1] All document citations are to the Court's docket entry numbers.

[2] Notice was attached to the Report regarding objections. (Doc. 10, p. 19).

1

This matter is now ripe for review. For the reasons stated below, the Court OVERRULES Petitioner's Objections, and ADOPTS the Report in its entirety.

**I.    BACKGROUND**

Although the facts of this case are sufficiently explained in the Report (Doc. 10), the Court will review the most relevant facts again here.

Petitioner's charges arose from a 2008 incident between the Petitioner and his former girlfriend that occurred in the home of the former girlfriend. (Doc. 6, Ex. 1, Ex. 9, p. 1). The former girlfriend testified that during an argument Petitioner caused extensive injuries to her, which were inflicted by what she thought may have been a large object. (Doc. 6, Ex. 9, p. 1). Petitioner went to trial on three charges: kidnapping, aggravated burglary, and felonious assault. (Doc. 6, Exs. 3, 5). At trial, several police officers involved in the case testified. One police officer testified that one piece of evidence was collected for DNA testing while another piece of evidence was tested for fingerprints; however, the results from those tests did not prove useful in identifying the victim's assailant. (Doc. 9, pp. 438-39, 452). On cross-examination of the police officers, Petitioner's counsel sought to elicit testimony from the police officers showing that they failed to collect or preserve crucial evidence of the crime scene, which could have been submitted for DNA testing, and failed to conduct more extensive DNA testing of the DNA sample taken which could have resulted in the identification of another person as the assailant or otherwise exonerated Petitioner. (*See* Doc. 9, pp. 388-91, 466-83, 534-36).

When the prosecutor made his closing argument, he made an effort to respond to Petitioner's position by making the following remarks:

> A few of the topics that you're going to hear [Petitioner's counsel] talk about is the lab report.
>
> What Lieutenant Dye said though, according to him, only one of the profiles was enough to get proper DNA, and profile testing.
>
> We saw from that DNA profile – and it was both hands that were tested that matched predominately a female.
>
> And in this case it's not unexpected for [the victim] to have put her hands on her head when she had a wound to her head. We know that's probably how the blood got on there. And that's why it belonged to a woman.
>
> Lieutenant Dye said he couldn't submit for DNA because he didn't have a large enough profile to check against anybody else.
>
> This sample was not kept secret by the prosecution from the defense. They knew the sample existed.
>
> If they were so convinced that Bryan would be excluded on DNA, they could have tested it as well. We know that didn't happen either, so none of those witnesses come into court –

(Doc. 6, Ex. 14, pp. 24-25). Petitioner's counsel objected to the prosecutor's last remark on the grounds that it shifted the burden and violated Petitioner's right to a fair trial. (Doc. 6, Ex. 14, pp. 25). The court held a sidebar conference in which it determined that the prosecutor had "shifted the burden" in his last remark to the jury, which required a limiting instruction be given to the jury. (Doc. 6, Ex. 14, pp. 25-26). Petitioner's counsel moved for a mistrial, but the court indicated that "I think it can be cured by an instruction. It will be struck." (Doc. 6, Ex. 14, p. 26). The court then instructed the jury as follows:

> Ladies and gentlemen, I'm going to ask you to disregard the last statement made by [the prosecutor] regarding whether or not the defense should have tested any samples here.
>
> In the heat of argument, people say things. First of all, let me point out, this is simply argument.
>
> Second of all, let me point out and reiterate, that the burden of proof is on the State.

3

> The defense need not put on any evidence, nor prove anything in this respect. The burden's solely on the State to prove the allegations.

(Doc. 6, Ex. 14, pp. 26-27).

In its final instructions to the jury before it retired to deliberate, the trial court reiterated that under the "burden of proof" to be applied, the "defendant is presumed innocent until his guilt is established beyond a reasonable doubt" and the "defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offenses charged in the indictment." (Doc. 6, Ex. 14, p. 69). Further, the court instructed the jury that "evidence" does not include "closing arguments of counsel," and that "[s]tatements or answers that were stricken by the Court, or which you were instructed to disregard, are not evidence, and must be treated as though you never heard them." (Doc. 6, Ex. 14, pp. 71-72).

After deliberations, the jury acquitted Petitioner of the kidnapping and aggravated burglary charges, but found Petitioner guilty on the felonious assault charge. (Doc. 6, Ex. 3, Ex. 5, Ex. 14, pp. 101-03).

Thereafter, Petitioner's counsel filed a motion for judgment of acquittal notwithstanding the jury's verdict, which apparently was denied. (*See* Doc. 6, Ex. 4). After a sentencing hearing, the trial court sentenced Petitioner to a four-year prison term for the felonious assault offense. (Doc. 6, Ex. 5).

On direct appeal to the Ohio Court of Appeals, First Appellate District, Petitioner contended that the trial court committed reversible error when it refused to grant a mistrial and instead gave a limiting instruction after the prosecutor made an improper burden-shifting remark during closing argument, and that the single conviction was

4

against the manifest weight of the evidence. (Doc. 6, Ex. 7). On July 21, 2010, the Ohio Court of Appeals overruled the assignment or error, reasoning:

> We agree with Swinford that [the prosecutor's remark] was improper since it suggested to the jury that Swinford needed to prove that he was innocent. But our analysis does not stop here. We must determine if this improper statement was so egregious that it deprived Swinford of a fair trial.[2]
>
> _____
>
> [2]*Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 94 S.Ct. 1868; *State v. Smith*, 87 Ohio St.3d 424, 200[0]-Ohio-450, 721 N.E.2d 93; *State v. Freeman* (2000), 138 Ohio App. 3d 408, 741 N.E.2d 566.
>
> Viewing the closing argument and the trial in their entirety, as we are required to do, we hold that this single statement did not violate Swinford's right to a fair trial. Following defense counsel's objection, the court instructed the jury to ignore the improper statement, and it also issued a lengthy and proper curative instruction. Later, the jury was again properly instructed that the state had the burden to prove Swinford guilty beyond a reasonable doubt. Jurors are presumed to follow the trial court's instructions. And we find nothing to demonstrate the contrary in this case.

(Doc. 6, Ex. 9, pp. 2-3) (footnote omitted).

Petitioner's counsel next filed a timely appeal to the Ohio Supreme Court based on the prosecutorial misconduct during closing arguments. (Doc. 6, Exs. 10-11). On December 15, 2010, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (Doc. 6, Ex. 13).

Petitioner's counsel filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 14, 2011. (Doc. 1). The Petition raises the following ground for relief:

> **Ground One:** Bryan Swinford's right to a Fair Trial as guaranteed by the 6th and 14th Amendments to the US Constitution were violated when the Prosecutor engaged in misconduct by shifting the burden of proof to Swinford in closing arguments.

> **Supporting Facts:** During the intial [sic] closing argument the prosecutor stated: "If they were so convinced that Bryan was going to be excluded on DNA, they could have had it tested as well. We know that didn't happen either, so none of those witnesses come into court."

(Doc. 1, p. 4).

In the Report, the Magistrate Judge addressed Petitioner's petition for relief pursuant to the standard of review in 28 U.S.C. § 2254(d), and concluded that the petition should be denied, a certificate of appealability should not issue, and petitioner should be denied leave to appeal *in forma pauperis*. (Doc. 10, p. 17). Petitioner subsequently filed his Objections to the Report. (Doc. 16).

## II. ANALYSIS

### A. Standard of Review

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

### B. Petitioner's Objections

Petitioner's Objections to the Report are disjointed and it is unclear as to which specific portions of the report Petitioner objects. The Court construes the objections broadly, and infers that the Petitioner intended to object to the Report on four separate grounds. Those objections are addressed separately below.

#### 1. First objection – Section 2254 deference standard

Petitioner's first objection appears to be that the Magistrate Judge should not have applied the deferential standard required by Section 2254 because the Ohio Appellate Court did not directly address the "harmless beyond a reasonable doubt" standard of review articulated in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828 (1967).

In a federal habeas case, the applicable standard of review governing the adjudication of the constitutional issue that was addressed on the merits by the Ohio Court of Appeals is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state court unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001). A federal habeas court also must give complete deference to evidence-supported state court findings of fact pursuant to the presumption of correctness found in 28 U.S.C. § 2254(e)(1). *Sumner v. Mata,* 455 U.S. 591, 597 (1982); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

However, where the state court adjudicated the petitioner's claim, but did not address the constitutional issue, the federal habeas court applies a modified deference standard. *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). The modified deference standard requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's

7

decision is contrary to or an unreasonable application of federal law." *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005). If the state court did not determine the merits of the federal constitutional claim at all, then the deferential standard in Section 2254 does not apply, and the federal habeas court conducts a *de novo* review to determine whether the state court decision is contrary to Supreme Court jurisprudence. *Lyell v. Renico*, 470 F.3d 1177, 1181-82 (6th Cir. 2006).

Here, the Magistrate Judge correctly concluded that the Ohio Appellate Court addressed the merits of the federal constitutional claim of whether Petitioner received a fair trial in light of the prosecutorial error, and it did so under the federal standard articulated in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868 (1974). (*See* Doc. 6, Ex. 9, pp. 2-3). As such, it was appropriate for the Magistrate Judge to review Petitioner's claim under the deferential standard articulated in Section 2254. Accordingly, Petitioner's first objection is overruled.

### 2. **Second objection – the "contrary to" clause of Section 2254(d)**

Petitioner's second objection appears to be that the Magistrate Judge improperly applied the "contrary to" clause of Section 2254(d). (Doc. 16, p. 1). Specifically, Petitioner argues that the Magistrate Judge incorrectly concluded that the Ohio Appellate Court was correct in applying the "fundamental fairness" standard of review articulated in *Donnelly*, 416 U.S. at 642, to determine whether the prosecutor's misconduct during trial deprived the defendant of a fair trial instead of applying the "harmless beyond a reasonable doubt" standard of review articulated in *Chapman*, 386 U.S. at 24. (Doc. 16, pp. 1-2). Petitioner argues that the "harmless beyond a reasonable doubt" standard should have been applied in this case. (Doc. 16, pp. 1-2).

To grant habeas relief under the "contrary to" clause, "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller*, 269 F.3d 609, 614 (6th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Greene v. Fischer*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011) (in assessing the merits of a constitutional claim under Section 22554(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state court adjudication on the merits). Further, a state court decision is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams*, 529 U.S. at 412-13), *cert denied*, __ U.S. __, 132 S. Ct. 1743 (Mar. 19, 2012).

In the Report, the Magistrate Judge found that the Ohio Court of Appeals' application of the *Donnelly* standard was not contrary to clearly established federal law. (Doc. 10, pp. 10-14). In so ruling, the Magistrate Judge looked first to the Tenth Circuit decision *Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990), which was cited by Petitioner as support for the application of the *Chapman* standard of review in a case where the state courts found a prosecutor's remarks to have infringed on a petitioner's "specific constitutional right" to the presumption of innocence. (Doc. 10, p. 11). The Magistrate Judge noted that Petitioner had not cited nor could the Magistrate Judge find any binding precedent from the Supreme Court or the Sixth Circuit that adopted the *Chapman* "beyond a reasonable doubt" standard applied in *Mahorney* where, as in

9

*Mahorney*, the prosecutor's challenged conduct was found to implicate a "specific constitutional right." (Doc. 10, p. 12). To the contrary, the Sixth Circuit has applied the *Donnelly* fundamental fairness standard to a prosecutorial misconduct claim analogous to the one asserted by Petitioner here. (Doc. 10, p. 12) (citing *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002)). The Sixth Circuit also has evaluated a prosecutorial misconduct claim involving an alleged violation of a petitioner's "specific" Sixth Amendment right to confront witnesses against him under the *Donnelly* "fundamental fairness" standard. (Doc. 10, p. 12) (citing *Hawkins v. Coyle*, 547 F.3d 540, 552-53 (6th Cir. 2008)).

The Magistrate Judge also noted that *Mahorney* is distinguishable from this case. (Doc. 10, p. 12). The Magistrate Judge explained that unlike the trial court in *Mahorney*, the trial court here sustained the objection of Petitioner's counsel to the prosecutor's statements, immediately instructed the jury to disregard the challenged remarks, and repeatedly emphasized to the jury that the burden was on the prosecutor to prove the criminal charges beyond a reasonable doubt. (Doc. 10, p. 13) (citing Doc. 6, Ex. 14, pp. 25-27, 69).

In his Objections to the Report, Petitioner does not challenge the Magistrate Judge's interpretation of *Mahorney* nor does he cite to any Supreme Court or Sixth Circuit precedent that demonstrates that the *Chapman* "beyond a reasonable doubt" standard is applicable in a case analogous to the present case. To the extent he intends to argue that some of the caselaw to which he cites demonstrates the application of *Donnelly* was contrary to clearly established federal law, that caselaw is distinguishable, as will be explained in more detail in addressing the third and fourth

objections. As such, the Court agrees with the Magistrate Judge that the Ohio Appellate Court's application of the *Donnelly* "fundamental fairness" standard was not contrary to clearly established federal law. Accordingly, Petitioner's second objection is overruled.

### 3. Third objection – the unreasonable application standard

Petitioner's third objection appears to be that the Magistrate Judge improperly applied Section 2554's "unreasonable application" standard. (Doc. 16, p. 2). Specifically, Petitioner appears to challenge the Magistrate Judge's findings as to the "deliberate" nature of the prosecutor's improper argument and the overall strength of government's case. (Doc. 10, p. 2; Doc. 16, pp. 2-3).

As the Magistrate Judge correctly stated, a state court's adjudication "only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [Petitioner's] case.'" (Doc. 10, p. 7) (citing *Otte*, 654 F.3d at 599-600).

In evaluating Petitioner's claim, the Magistrate Judge reviewed the Ohio Appellate Court's determination under the *Donnelly* fundamental fairness standard as to whether the prosecutor's remarks within the context of the trial amounted to an unreasonable application of federal law. (Doc. 10, p. 10). Specifically, the Magistrate Judge noted seven factors to be considered. (Doc. 10, p. 10). Upon reviewing the seven factors, the Magistrate Judge concluded:

> [T]he trial court not only sustained defense counsel's objection to the prosecutor's statements and immediately thereafter instructed the jury to disregard the challenged remarks, it took "special care" at that juncture in the proceeding to ensure that the prosecutor's stricken remarks would have no effect on the jury by emphasizing

11

> the burden was "solely" on the State to prove the criminal charges and that the petitioner "need not put on any evidence, nor prove anything" to establish his innocence. (*See* Doc. 6, Ex. 14, Tr. 25-27.) Furthermore, in its final instructions to the jury, the trial court reiterated that petitioner was to be "presumed innocent" and thus "must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense charged by the indictment." (Doc. 6, Ex. 14, Tr. 69.) . . .
>
> The alleged misconduct in this case was an isolated event. Moreover[,] it appears clear from the record that the remark was not a deliberate attempt by the prosecutor to shift the burden of proof to petitioner. Indeed, when the trial court told the prosecutor at sidebar that he had "just shifted the burden," the prosecutor responded by stating: "I did not shift the burden." Instead, it appears that the prosecutor was attempting to respond, albeit in advance to defense counsel's closing argument, to the defense position that the police acted improperly by failing to collect evidence and conduct DNA testing that might have exonerated petitioner.

(Doc. 10, p. 13).

Petitioner's objections focus on only two of the factors reviewed by the Magistrate Judge. The first objection focuses on the "deliberate attempt" conclusion of the Magistrate Judge. Specifically, Petitioner objects on the grounds that the Magistrate Judge

> injects her findings as to the deliberate nature of the improper argument highlight the prosecutor's denial he shifted the burden as proof it was not deliberate. This finding should not be considered with the objections for two reasons; [sic] 1 –there is no fact to support such and 2-It is contrary to the findings of the trial court. At sidebar, the trial court noted "you shifted the burden."

(Doc. 16, pp. 2-3).

This Court disagrees that the Magistrate Judge's findings either lacked factual support or were contrary to the findings of the trial court. As the Magistrate Judge noted (Doc. 10, p. 14), the record shows that when the trial court indicated the prosecutor had

12

shifted the burden, the prosecutor responded by stating "I did not shift the burden" (Doc. 6, Ex. 14, Tr. 25). That fact reflects the nature of the remarks and supports the conclusion that the prosecutor did not deliberately shift the burden of proof. Even though his comment may have had the effect of shifting the burden, as noted by the trial court, it does not demonstrate that the prosecutor deliberately did so.

Petitioner's second objection is with regard to the strength of the proof against Petitioner, as reflected by the length of the jury deliberations. Specifically, he argues that "[w]hile the defense counsel timely objected and the trial court issued an instruction, the jury deliberated 3 days and found Swinford not guilty on 2 out of the 3 charges brought." (Doc. 16, p. 3). According to Petitioner, "[t]his demonstrates the evidence was far from overwhelming, less than immediately persuasive and arguably weak." (Doc. 16, p. 3). Petitioner relies on several cases in support of this argument. (Doc. 16, p. 3). However, none of the cases cited by Petitioner demonstrate that the Ohio Appellate Court unreasonably applied the law to the facts of this case.

None of the cases cited by Petitioner mandate a finding of prejudicial error any time deliberations last several days or when the jury suggests that it may not be able to reach a unanimous verdict. *See Powell v. Collins*, 332 F.3d 376, 401 (6th Cir. 2003); *United States v. Varoudakis*, 233 F.3d 113, 127 (1st Cir. 2000); *United States v. Ottersburg*, 76 F.3d 137, 140 (7th Cir. 1996); *Medina v. Barnes*, 71 F.3d 363, 369 (10th Cir. 1995); *Kennedy v. Lockyer*, 379 F.3d 1041 n.18 (9th Cir. 1994). In those cases, the length of the trial deliberations was considered in light of the circumstances of the case. *Varoudakis*, 233 F.3d at 126-27; *Ottersburg*, 76 F.3d at 140; *Kennedy*, 379 F.3d at 1055. The effect of an actual or potential stalemate or deadlock also was considered in

light of the circumstances of the case. *Powell*, 332 F.3d at 401; *Varoudakis*, 233 F.3d at 126; *Medina*, 71 F.3d at 369. Further, in all of those cases where a prejudicial error was found, the error at issue was related to either the introduction of prejudicial evidence by counsel or the failure of counsel to introduce mitigating evidence during the course of the proceedings. *See Powell*, 332 F.3d at 401 (trial counsel failed to investigate, research or collect pertinent records regarding the petitioner's background or interview any of personal witnesses for petitioner for purposes of presentation during penalty phase); *Varoudakis*, 233 F.3d at 127 (in an arson case, the admission of prior bad act testimony by defendant's girlfriend and co-conspirator that she saw defendant set fire to his leased car months before the restaurant fire at issue in the case was highly prejudicial); *Medina*, 71 F.3d at 369 (trial counsel failed to investigate and introduce evidence refuting the credibility of the only eyewitness to the murder that the petitioner was accused of committing); *Kennedy*, 379 F.3d at 1055 (due to trial court's ruling that the petitioner could not obtain the full transcript of the proceedings from his first trial that had resulted in a mistrial, petitioner's new counsel in the second trial was prevented from excluding evidence of gang involvement by the petitioner during the second trial which had been excluded during the first trial as highly prejudicial).[3] Not one of those cases involved, as the present case does, an isolated statement made by counsel during closing arguments about which multiple curative instructions were given by the trial court to the jury.

Further, Petitioner's representation of the length of the deliberations and the ability of the jury to reach a verdict in this case is contrary to the record before this

---

[3]The outlier case is *Ottersburg*, 76 F.3d at 140. That case dealt with whether the trial court committed plain error by allowing two alternate jurors to deliberate with the twelve-person jury and required them to sign the verdict form. *Id.* at 139.

Court. Although Petitioner states that the deliberations lasted 3 days, the transcript of the state court proceedings showed the deliberations lasted less than 2 full days, commencing at 3:20 p.m. on July 13, 2009 and concluding at 1:49 p.m. on July 15, 2009. (Doc. 6, Ex. 14, pp. 96, 101). Moreover, contrary to Petitioner's unsupported statement that "the jury at one point indicated it was deadlocked," there is no indication in the transcript that the jury was deadlocked. (*See* Doc. 6, Ex. 14, pp. 96-101). The jury instead asked on the afternoon of July 14, 2009 to rehear some evidence in the case, which the court denied. (Doc. 6, Ex. 14, pp. 98-100). At 1:49 p.m. the following day, the jury returned a verdict. (Doc. 6, Ex. 14, p. 101). This appears to reflect the jury making a diligent attempt to evaluate the evidence and verify the testimony of witnesses to come to a careful and reasoned decision. It does not demonstrate that the jury was concerned it could not reach a unanimous verdict. As such, none of the cases that Petitioner relies on are directly analogous to this case, and they do not demonstrate that the Ohio Appellate Court unreasonably applied federal law to the facts of Petitioner's case. Accordingly, Petitioner's third objection is overruled.

### 4.     Fourth objection – the "harmless error" standard

The fourth objection of Petitioner appears to be that the Magistrate Judge incorrectly applied the "harmless error" standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* standard governs federal habeas corpus reviews, and provides that a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* The Supreme Court has reaffirmed the use of the *Brecht* standard "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard

set forth in *Chapman*." *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 2328 (2007). *Accord*: *Vasquez*, 496 F.3d at 575.

Petitioner, however, "urge[s]" this Court "to reject the holding of *Fry*." (Doc. 16, p. 5). Instead, Petitioner asks the Court to determine that because the state court did not apply the *Chapman* standard, the Court should reverse the conviction without resorting to the harmless error analysis. (Doc. 16, p. 5). Petitioner appears to rely on *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) in support of his position.

The Court declines Petitioner's invitation to reject Supreme Court precedent of *Fry*, which requires this Court to apply the harmless error standard regardless of whether the state court applied *Chapman*. *Fry*, 127 S.Ct. at 2328. The Court does not find that the error in this case is one which rises to the level of a constitutional error for which reversal of conviction without resort to a harmless error analysis is appropriate. Courts have permitted the bypass of the harmless error analysis only in the case of structural defects that affect the entire framework in which the trial proceeds, rather than when there is only an error in the trial process itself. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 2563-64 (2006). The structural error at issue in *Sullivan*, the case upon which Petitioner relies, was the denial of the right to trial by jury by giving a defective reasonable doubt instruction. *Sullivan*, 508 U.S. at 279. The instruction the court gave to the jury suggested that the jury had to have a higher degree of doubt than is required for acquittal under the reasonable doubt standard. *Id.* at 276-77. In contrast, the Ohio Appellate Court properly instructed the jury in this case on the reasonable doubt standard on multiple occasions. (Doc. 6, Ex. 14, pp. 26-27, 69, 71-72). Moreover, the error at issue in Petitioner's case came from one isolated

statement made by the prosecutor during closing argument, rather than from a jury instruction provided by the trial court. The trial court also took immediate and proper efforts to cure the prosecutor's error. That one isolated error is a trial error, not a structural error, and it may be assessed in the context of other evidence presented in order to determine whether the error was harmless beyond a reasonable doubt. *See Gonazalez-Lopez*, 126 S.Ct. at 2564-64. As such, this Court finds the Magistrate Judge was proper in considering Petitioner's arguments under the harmless error standard and overrules Petitioner's objection on that basis.

To the extent Petitioner also intends to argue that the harmless error standard was improperly applied by the Magistrate Judge, the Court overrules that objection as well. When applying the harmless error standard, the court sitting on habeas review must decide whether the error influenced the verdict. *O'Neal v. McAninch*, 513 U.S. 432, 435-38 (1995). If the court is certain that the error had no or very slight effect or influence, then the verdict must stand. *Id*. Only if the court has grave doubt as to whether a trial error had a substantial and injurious effect or influence in determining the jury's verdict must the court treat the error as if it did and grant the habeas writ. *Id*.

Here, the Magistrate Judge was correct in concluding that the error had little or no effect on the jury's verdict. The error occurred during closing statements. The trial court sustained the objection to the prosecutor's statement and immediately instructed the jury to disregard the statement. (Doc. 6, Ex. 14, pp. 25-27). It thereafter reiterated in its final instructions to the jury that Petitioner was to be presumed innocent and that the prosecution at all times had the burden of convincing the jury beyond a reasonable doubt of every essential element of the offense. (Doc. 6, Ex. 14, pp. 69, 71-72). It is a

"well-established presumption jurors follow [the judge's] instructions." *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004) (citing *Penry v. Johnson*, 532 U.S. 782, 799, 121 S. Ct. 1910 (2001)).

Moreover, Petitioner's argument that the jury's three-day deliberation (which, as explained above, actually lasted less than two days) or the alleged deadlock demonstrates that the evidence was far from overwhelming is insufficient, in light of all of the circumstances, to give the Court grave doubt as to whether the error had a substantial or injurious effect on the jury's verdict. As explained with respect to the third objection (*supra*, pp. 13-15), the cases relied upon by Petitioner in support of the arguments are distinguishable. Moreover, the jury in this case never reached a deadlock or otherwise indicated it could not reach a unanimous verdict. (Doc. 6, Ex. 14, pp. 96-101).

Accordingly, Petitioner's fourth objection is overruled.

### III. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the Objections of Petitioner (Doc. 16) and **ADOPTS** the Report (Doc. 10) in its entirety. It is hereby **ORDERED** that:

1, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED with prejudice.

2. A certificate of appealability shall not issue with respect to Petitioner's sole ground for relief, which has been addressed on the merits herein, because Petitioner has not made a substantial showing that he has stated a "valid claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing

*Barefoot v. Estelle*, 463 U.S. 880, 894 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    3. With respect to any application by Petitioner to proceed on appeal *in forma pauperis*, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this Order adopting the Report would not be taken in "good faith." Therefore, it DENIES Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

    **IT IS SO ORDERED.**

    s/ Michael R. Barrett
    Michael R. Barrett, Judge
    United States District Court